**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **TRAVIS BARNETT,** | ) |
| | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. 16-CV-187-TCK-TLW |
| | ) |
| **COE PRODUCTION COMPANY, LLC,** | ) |
| | ) |
| **Defendant.** | ) |

**OPINION AND ORDER**

Before the Court is Defendant's Motion for Summary Judgment (Doc. 24).

**I.   Factual Background**

Plaintiff Travis Barnett ("Barnett") is a Kansas resident employed by Danlin Industries Corporation ("Danlin"), a Kansas corporation, as a field data technician. Defendant Coe Production Company ("Coe") is an Oklahoma corporation in the business of exploring for, drilling for, and producing oil at wells in Oklahoma. Prior to April 9, 2014, Coe entered into an oral agreement with Danlin whereby Danlin supplied Coe with chemicals for one of its seven wells on a tract of land in Oklahoma known as Curl's Lease. In addition to supplying chemicals, Danlin provided services associated with the chemicals, including pumping the chemicals into the well and testing water onsite.

On April 9, 2014, Barnett was working at Curl's Lease. After collecting a water sample from a water tower, he fell from the top step of a wooden staircase. According to Coe, Barnett sought and recovered benefits from Danlin under the Oklahoma Administrative Workers' Compensation Act, Okla. Stat. tit. 85A, § 1, *et seq.* (Supp. 2013) ("OAWCA"). Coe did not cite any evidence in support of this contention, and it is not part of his statement of material facts. Barnett contends he received

benefits from Danlin under the workers' compensation laws of Kansas, but he also does not cite any evidence in support of that assertion. For purposes of this motion and because Coe bears the burden of proof, the Court assumes Barnett recovered from Danlin under the workers' compensation laws of Kansas.

On April 8, 2016, Barnett filed suit in this Court against Coe alleging that Coe was negligent in creating and failing to warn regarding an unreasonably dangerous condition, failing to maintain its business premises, and failing to inspect its business premises. Barnett sued Coe "for the benefit of [Danlin] or [Danlin's] worker's compensation insurer as their interests appear." (Compl. ¶ 16.) Coe moved for summary judgment on all claims.

## II.     Summary Judgment Standard

Summary judgment is proper only if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©. The moving party bears the burden of showing that no genuine issue of material fact exists. *See Zamora v. Elite Logistics, Inc.*, 449 F.3d 1106, 1112 (10th Cir. 2006). The Court resolves all factual disputes and draws all reasonable inferences in favor of the non-moving party. *Id*. However, the party seeking to overcome a motion for summary judgment may not "rest on mere allegations" in its complaint but must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The party seeking to overcome a motion for summary judgment must also make a showing sufficient to establish the existence of those elements essential to that party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-33 (1986).

**III.    Motion for Summary Judgment**

Coe argues that it enjoys immunity from Barnett's tort claims as Danlin's "principal employer," as that term is used in § 5(A) and § 5(E) of the OAWCA. In response, Barnett argues: (1) the OAWCA does not apply because Barnett never sought benefits under the OAWCA; (2) questions of fact preclude summary judgment as to the availability of § 5(E) immunity; and (3) the immunity extended to oil and gas well owners/operators under § 5(A) violates the Oklahoma Constitution.

**A.    Application of OAWCA**

The OAWCA's "Exclusive Liability/Immunity" provision states that "[t]he rights and remedies granted to an employee subject to the provisions of the [OAWCA] shall be exclusive of all other rights and remedies of the employee . . . ." Okla. Stat. tit. 85A, § 5(A). Barnett contends that, because he "never claimed benefits for an injury pursuant to the provisions of the [OAWCA]," he was "never subject to the [OAWCA]." (Resp. to Mot. for Summ. J. 4-5.) Coe relies upon § 3 of the OAWCA, which provides that "[e]very employer and every employee, unless otherwise specifically provided in this act, shall be subject and bound to the provisions of the [OAWCA]." Okla. Stat. tit. 85A, § 3(A). Neither party cited any case law or devoted significant briefing to this threshold argument.

Based on a common-sense understanding of the OAWCA, the Court concludes that Barnett is an employee subject to the OAWCA, despite the fact that he did not seek benefits from Coe or Danlin thereunder. First, Barnett filed suit in Oklahoma district court on the basis of diversity jurisdiction, and the Court must apply Oklahoma law regardless of where Barnett originally collected workers' compensation proceeds from Danlin. Second, if immunity was only triggered

3

after an injured worker sought benefits under the OAWCA, it would cease to serve any purpose in providing employers immunity from tort claims. Third, the Court finds nothing in case law or statutes to suggest that a "principal employer" in Oklahoma loses statutory immunity because the injured employee received workers' compensation benefits from the "immediate employer" in another state. Finally, the OAWCA governs the precise situation presented – namely, whether and under what circumstances a secondary employer enjoys immunity from suit in tort. Were the Court to accept Barnett's argument, the Court would be effectively side-stepping Oklahoma statutes and case law intended to govern Coe's immunity or non-immunity from Barnett's tort claims.

**B.     "Principal Employer" Obligations/Immunity under the OAWCA**

Barring application of a relevant exclusion, the OAWCA is an injured employee's exclusive remedy against an employer, meaning an employer has immunity from being sued in tort. Okla. Stat. tit. 85A, § 5(A). This immunity to entities considered an "intermediate or principal employer" of the "immediate employer" of the injured worker based on the following language:

> The immunity created by the provisions of this section shall not extend to action against another employer, or its employees, on the same job as the injured or deceased worker where such other employer *does not stand in the position of an intermediate or principal employer to the immediate employer of the injured or deceased worker.*

Okla. Stat. tit. 85A, § 5(E) (emphasis added). Conversely, an employer who does stand in the position of an intermediate or principal employer is "secondarily liable to the worker in compensation" and therefore immune from suit. *Bradley v. Clark*, 804 P.2d 425, 428 (Okla. 1990).[1]

The term "principal employer" is not defined in the OAWCA but is explained in case law. *See* Okla.

---

[1] In *Bradley*, the Oklahoma Supreme Court addressed a prior version of the OAWCA. *Id.* However, the relevant language is identical to the language in § 5(E), and *Bradley*'s "principal employer" test remains good law.

4

Stat. tit. 85A, § 2, annotation 38 (annotation of cases discussing liability of "principal employer"). Coe contends it is a "principal employer" of Danlin (and therefore immune from tort liability) under two alternative statutory provisions: (1) the general language quoted above in § 5(E) and its corresponding common-law test; and (2) express language in § 5(A) applicable to owners and operators of oil and gas wells.

### 1.     Section 5(E)

The undersigned has previously held that *Bradley*, which is more restrictive than prior Oklahoma Supreme Court cases, sets forth the controlling test for "principal employer" status. *See Carlson v. U.S. ex rel. U.S. Postal Serv.*, 248 F. Supp. 2d 1040, 1045 (N.D. Okla. 2003). Under this three-part inquiry, the court focuses "on the contract and the principal, rather than the individual worker." *Id.* The inquiry requires the following three steps:

> [I]n order to determine whether a principal is a statutory employer of a contractor's employees, a court must first inquire whether the contract work is specialized or nonspecialized. This inquiry takes into consideration whether the level of skill, training, and experience required to perform the work at issue is not ordinarily possessed by workers outside the contract field. If the contract work is specialized per se, it is not, as a matter of law, part of the principal's trade, business, or occupation. If the contract work is not specialized per se, the court must then compare the contract work with the principal's trade, business, or occupation to determine whether the contract work could be considered a part thereof. Finally, the court must inquire whether the principal was actually engaged at the time of the injury in the trade, business, or occupation of the hired contractor.

*Id.* (quoting *Izard v. United States*, 946 F.2d 1492, 1496 (10th Cir. 1991)).

Barnett's evidence establishes questions of fact as to whether Coe qualified as Danlin's "principal employer" under the *Bradley* test. Barnett has presented evidence that could lead a reasonable jury to believe Danlin provided Coe with "specialized" chemical services *per se*, which would deprive Coe of immunity. When hired by Coe, Danlin selected and customized chemicals

5

based on Coe's needs and then regularly monitored/tested the chemicals to determine if they were providing the desired result. A jury could find that the ability to properly create, mix, and test chemicals to maximize oil production "is not ordinarily possessed by" workers outside Danlin's field. Further, the Court finds questions of fact as to whether Coe's employees "were fully capable of performing the work" Danlin was hired to perform. *Cf. Carlson*, 248 F. Supp. at 1045 (reasoning that postal service's employees were fully capable of performing the contracted-for work, which was providing postal services at a neighborhood postal unit). Although Mr. Coe contends in his affidavit that his own employees have the ability to pump chemicals into wells and conduct water tests, Barnett states that he performed his services with a special machine called a centrifuge, which Coe's employees were not capable of operating. These competing affidavits create questions of fact as to the specialized nature of Danlin's services. *See Bradley*, 804 P.2d at 429 (concluding that use of specialized equipment supported judge's finding that "killing" a well was not part of owner/operator's customary business).

Second, even if not specialized *per se*, a jury could conclude that Danlin's contract work – namely, providing chemicals and chemical-related services for the well – is not within Coe's trade, business, or occupation as an oil and gas producer. A relevant consideration is whether Danlin's services are normally provided by the owner/operator's employees or by independent contractors. *See id.* Coe did not provide any evidence as to whether it is customary in the industry to hire independent contractors to perform chemical-treatment services. Nor did Coe provide evidence as to whether the work completed by Danlin was "regular and predictable," as opposed to non-recurring or extraordinary. *See id.* Danlin only provided this service for one of the seven wells on

6

Curl's Lease, indicating this may be a non-regular service performed at the drill site. Therefore, Coe has not shown that it is entitled to summary judgment under the second inquiry.

Finally, Coe has failed to show as a matter of law that it was "actually engaged in performing work similar to that being performed by" Danlin. *See id.* Again, Coe has not presented any evidence as to whether and how often its own employees treat wells with chemicals. While Coe contends it used Danlin merely as a convenience, Barnett's affidavit states otherwise. Accordingly, questions of fact exist as to all three parts of the *Bradley* test, and Coe is not entitled to summary judgment based on § 5(E)'s general grant of immunity to "principal employers."

### 2. Section 5(A) - Owner/Operator Deemed Principal Employer

In addition to setting forth the exclusive remedy language, § 5(A) provides:

> For the purpose of extending the immunity of this section, any operator or owner of an oil or gas well or other operation for exploring for, drilling for, or producing oil or gas *shall be deemed to be an intermediate or principal employer* for services performed at a drill site or location with respect to injured or deceased workers whose immediate employer was hired by such operator or owner at the time of the injury or death.

Okla. Stat. tit. 85A, § 5(A) (emphasis added).[2] This language carves out owners/operators of oil and gas wells and automatically deems them "principal or immediate employers," even if they would otherwise fail the *Bradley* test discussed above. This language is a legislative mandate that, regardless of the facts, owners/operators of oil and gas wells will not be liable in tort to injured employees of subcontractors performing services at a drill site.

---

[2] This language was added in 2011 amendments, *see* Okla. Stat. tit. 85, § 302 (Supp. 2011), and was maintained in the 2013 amendments, which renamed and overhauled Oklahoma's workers' compensation regime, *see* Okla. Stat. tit. 85A, § 5(A) (Supp. 2013).

Coe contends that it qualifies as a "principal employer" under this definition because (1) it conducts operations for exploring for, drilling for, or producing oil or gas, (2) it hired Danlin (Barnett's immediate employer) to perform services at a drill site. Barnett does not dispute that Coe satisfies the definition in § 5(A). Instead, Barnett argues this protection of oil and gas companies is an unconstitutional "special law" under the Oklahoma Constitution because it creates disparate treatment of members of a class without a reasonable basis. (*See* Resp. to Mot. for Summ. J. 5-7 (arguing that legislature cannot create disparate treatment of members of the same class – namely, injured workers exposed to same risks – based on type of service being provided for the immediate employer).) Barnett contends the "only industry protected in the 2011 law and the [OAWCA] passed in 2013 is the oil and gas industry and their subcontractors working on the well site." (*Id.* 7.) Barnett further argues that the law violates Article 2, Section 7 of the Oklahoma Constitution because it deprives Barnett of due process, and violates Article 2, Section 6 of the Oklahoma Constitution because it deprives Barnett of an adequate remedy at law.[3]

Conversely, Coe argues that granting owner/operators *per se* immunity is a permissible part of the "grand bargain" struck upon enacting any workers' compensation regime, *see generally Torres v. Seaboard Foods, Inc.*, 373 P.3d 1057, 1079-81 (Okla. 2016) (explaining the "grand bargain"), and that "[i]f the legislature can carve out a class of tort victim for 'special treatment' under the general workers' compensation law, it also has the power to declare who is in that special class." (Reply in Support of Mot. for Summ. J. 5.) Coe further contends the statute does not violate Barnett's right to due process or deprive Barnett of an adequate remedy at law.

---

[3] The Court construes Barnett's arguments as arising solely under the Oklahoma Constitution. If Barnett challenges the law under the U.S. Constitution, Barnett shall so state in his supplemental brief.

The parties agree that no court has published an order substantively addressing whether the owner/operator *per se* immunity in § 5(A) violates the Oklahoma Constitution.[4] Nor has the Court located any controlling case law.[5] Based on the other rulings set forth above, the Court cannot resolve Coe's motion for summary judgment without deciding whether the owner/operator immunity in § 5(A) violates the Oklahoma Constitution. The Court is therefore considering certification of this question to the Oklahoma Supreme Court pursuant to the Revised Uniform Certification of Questions of Law Act, Okla. Stat. tit. 20, § 1601, *et seq*. Because neither party requested certification, the Court orders additional briefs as explained in more detail below.

### IV. Conclusion

Coe's motion for summary judgment (Doc. 24) is denied to the extent it seeks judgment pursuant to § 5(E) and the relevant common-law test. Coe's motion for summary judgment would be granted pursuant to the owner/operator immunity in § 5(A), except that Barnett challenges this language as a violation of the Oklahoma Constitution. The Court is considering certifying that question to the Oklahoma Supreme Court.

The parties are ordered to file briefs no longer than five pages in length that: (1) state whether they support or oppose certification of the question to the Oklahoma Supreme Court; and

---

[4] In his brief, Barnett discussed a Caddo County case in which Judge Richard Van Dyck denied an owner/operator's motion to dismiss premised upon § 5(A) and apparently accepted the injured worker's argument that the owner/operator immunity in § 5(A) violated the Oklahoma Constitution's prohibition of special laws. However, Barnett did not attach the order or briefs or provide the case name.

[5] There is ample case law applying common-law "principal employer" tests to owners/operators of oil and gas wells but no case addressing the *per se* immunity in § 5(A), which was first added in 2011.

(2) propose language for any Certification Order the Court may enter, including a statement of the question and issues.  These briefs shall be filed no later than two weeks from the date of this Order.

The Court will issue notice to the Oklahoma Attorney General informing him that this case raises a constitutional challenge to an Oklahoma law.  *See* 28 U.S.C. § 2403(b); Fed. R. Civ. P. 5.1(b).

All remaining dates in the Scheduling Order (Doc. 23), including the pretrial conference and trial, are hereby STRICKEN.  Such dates will be reset, if necessary, following the Court's receipt of the parties' briefs.

**SO ORDERED this 7th day of April, 2017.**

**TERENCE KERN**
**United States District Judge**